IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JANE' DOWNING | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-1006-P |
| | § | |
| KISHORE PONDUGULA, ET AL. | § | |

### FINDINGS, CONCLUSION, AND RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS FOR FALIURE TO STATE A CLAIM AND ORDER FOR PLAINTIFF TO PROPERLY SERVE DFENDANT NEPHSERV LLC

Pending before the Court is Defendants Kishore Pondugula ("Pondugula") and Nephserv LLC ("Nephserv")'s Motion to Dismiss Under Rule 12(b) [doc. 15], filed November 9, 2022. Having carefully considered the motion and response, the Court recommends that Defendants' motion be **DENIED**.

### I.   FACTUAL BACKGROUND[1]

On August 25, 2021, *pro-se* Plaintiff JaNe' Downing ("Downing" or "Plaintiff") filed the above-styled and numbered cause against Defendants Pondugula[2] and Nephserv. Thereafter, on October 27, 2021, Downing filed an Amended Complaint in which she asserted the following claims against Defendants: (1) violation of section 3617 of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*; (2) violation of section 3604(b) of the FHA, and (3) breach of contract and violation of section 3604(a) of the FHA. Downing's claims arise out of Pondugula's allegedly sexually harassing and discriminatory

---

[1] Because the Court is considering a Motion to Dismiss, the Court must construe all facts in the light most favorable to Downing. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Thus, the facts are taken as true as alleged by Downing in her Amended Complaint.

[2] In her Amended Complaint, Plaintiff alleges that Pondugula is "registered as a director/agent of Nephserv, LLC, operating under the name of Bizflix, LLC, in which Pondugula is also a director/agent." (Plaintiff's Amended Complaint at 2.) Plaintiff also claims that Defendant Nephserv, LLC is owned and operated by Pondugula. (*Id.*)

1

behavior toward Downing, which ultimately caused Defendants not to renew Downing's residential lease, accept payment from the Texas Rent Relief Program, or make repairs as retaliation for Plaintiff declining Pondugula's sexual advances.

In her Amended Complaint, Downing alleges that, on or around August 31, 2020, Downing entered into a one-year lease with Defendant to rent a residential property in Arlington, Texas. (Plaintiff's Amended Complaint ("Pl.'s Am. Compl.") at 2.) Downing claims that on August 31, 2020, when she received her keys from Pondugula, Pondugula asked to take Downing out on a date. (*Id.*) Downing alleges that she declined Pondugula's "advance and stated that she had a boyfriend." (*Id.*) Thereafter, between September 2020 and June 2021, "Pondugula continued to make advances and comments to Ms. Downing, telling her how beautiful she [was] and how much he liked her." (*Id.*) Around Easter of 2021, Pondugula, while inside Downing's residence, "grabbed Downing's hand, asked her to give him a massage, and further asked her to 'make [him] feel good.'" (*Id.*) Downing claims that she snatched her hand away, declined Pondugula's advance, and informed Pondugula that she would not give him a massage as she was not a masseuse. (*Id.*) According to Downing, Pondugula "told Ms. Downing that she could just try, and stated that if Ms. Downing made him feel good, he would not increase her rent, and would compensate her very well." (Pl.'s Am. Compl. at 4.)

The next day, Downing, at Pondugula's request, called Pondugula. (Pl.'s Compl. at 4.) During the phone conversation, Pondugula asked Downing if "she had reconsidered his request for a massage." (*Id.*) Downing again told Pondugula that she would not give him a massage and asked Pondugula about renewing her lease and if the rent would be increased. (*Id.*) Pondugula allegedly assured Downing that her lease would be renewed and her rent would not increase by more than $50 but that, "if she made him

feel good, he would take care of her and make sure her rent did not increase." (*Id.*) Thereafter, Downing claims that Pondugula continued to harass and make advances toward Downing for several weeks. (*Id.*)

On May 5, 2021, in a recorded phone call with Pondugula, Downing alleges that Pondugula can be heard "harassing Ms. Downing about a massage once again, and asking her when she would call him." (*Id.*) Downing claims that she again "told Pondugula that she was not a masseuse and knew nothing about massaging." (*Id.*) Sometime in May 2021, Downing informed Pondugula that she needed to have a toilet repaired and Pondugula "responded by sending Ms. Downing a picture of a plunger." (Pl.'s Am. Compl. at 5.) Downing claims that "Pondugula made the maintenance repair difficult . . . and refused other repairs subsequently requested." (*Id.*)

Downing further alleges that, on June 7, 2021, Downing called Pondugula to inquire about the Texas Rent Relief Program[3] and that Pondugula was extremely rude and dismissive and said he would not accept any payments from the program even though they had discussed the program on a prior occasion. (*Id.*) In response to Pondugula's rudeness, Downing claims that she stated that she hoped Pondugula was not retaliating against her because she declined his advances and would not give him a massage. (*Id.*) At this point, "Pondugula completely denied ever asking for a massage." (*Id.*) Several weeks after Downing's final rejection of Pondugula's sexual advances, Downing received an email from Pondugula stating that he would not renew her lease. (Pl.'s Am. Compl. at 6.)

Downing further asserts that Pondugula's refusal to make repairs and refusal to renew her lease were "directly linked to Ms. Downing declining Pondugula's advances and her threat to file a retaliation

---

[3] According to Downing, one of Downing's neighbors told Downing that "Pondugula accepted [the neighbor's] application for the Texas Rent Relief Program, but in doing so, Pondugula fraudulently added approximately $2,500 dollars in additional late fees on the application." (Pl.'s Am. Compl. at 6.) Downing further claims that, on August 10, 2021, "Pondugula further retaliated when he emailed Ms. Downing's neighbor and threatened legal action against the neighbor if she had any further conversations with Ms. Downing about her lease or about the Texas Rent Relief Program." (Pl.'s Am. Compl. at 7.)

3

against Pondugula." (Pl.'s Am. Compl. at 5.) Downing also claims that, prior to her declining Pondugula's sexual advances, "Pondugula repeated told Ms. Downing how good of a tenant she was, that he appreciated how well she maintained his property, that he would love to keep her as a tenant, and that he would keep the Property available to her and would undoubtedly renew her lease." (Pl.'s Am. Compl. at 6.) Downing states that, "[o]n the basis of Pondugula's promises, Ms. Downing felt she would be entitled to remain in the Property for at least another year, and therefore enrolled her children in an elementary school located 7 miles from the Property." (*Id.* at 7.)

Downing alleges that "Pondugula's actions amounted to quid pro quo harassment, unlawful retaliation, sexual discrimination, and interference with the enjoyment of the Property in violation of the FHA." (Pl.'s Am. Compl. at 7.) Downing claims that, but for her sex (female) and her rejection of Pondugula's unwanted sexual advances, she would not have been the subject of Pondugula's harassment. (*Id.* at 6.) Downing further states that "Pondugula's actions have caused Ms. Downing severe mental and emotional stress and anxiety as she has been forced to undergo an eviction proceeding in state court and is now uncertain of her future and current housing arrangements." (*Id.* at 5.)[4] Downing claims that she is an "aggrieved person," as defined by section 3602(i) of the FHA and has suffered damages as a result of Pondugula's conduct. (Pl.'s Am. Compl. at 8.) Plaintiff seeks all damages available to her, including compensatory and punitive damages as well as reasonable future attorney's fees and costs of litigation. (*Id.*)

In their motion to dismiss, Defendants claim that Downing has failed to state a claim against them under Federal Rule of Civil Procedure ("Rule") 12(b)(6) and for insufficient service of process

---

[4] Plaintiff also alleges that, "[d]ue to Pondugula's continued harassment and retaliation, via telephone, text message, email, and in-person, Ms. Downing suffered mentally, emotionally, and physically." (Pl.'s Am. Compl. at 7.)

4

under Rule 12(b)(5). (Defendants' Brief in Support of Motion to Dismiss Amended Complaint Under Rule 12(b) ("Defs.' Br.") at 1.) Specifically, Defendants argue that: (1) Plaintiff's claims fail to meet the required pleading standard; (2) Plaintiff failed to adequately plead that any act or omission was undertaken because of Plaintiff's race, color, religion, sex, familial status, or national origin; (3) the alleged acts were not severe or pervasive and do not amount to sex discrimination as there were no sexual acts, requests, or propositions pled;[5] (4) Plaintiff failed to plead which Defendant allegedly rented the property and whether Pondugula's alleged acts can be attributed to Defendant Nephserv; (5) Plaintiff failed to state a breach of contract claim; (6) Plaintiff failed to adequately plead damages for any of her claims; and (7) there has been insufficient service of process on both Defendants. (Defs.' Br. at 1-10.)

## II.    LEGAL STANDARD AND ANALYSIS

### A.    Rule 12(b)(6)

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

---

[5] Defendants state that, "[a]s an initial matter, the Fifth Circuit has not even ruled whether a discrimination claim under the [FHA] can be premised on sexual harassment allegations." (Defs.' Br. at 5.)

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

### 1. Claims Under the Fair Housing Act

"The Fair Housing Act, enacted as Title VIII of the Civil Rights Act of 1968, effectuates the Congressional policy of achieving 'truly integrated and balanced living patterns.'" *Pelot v. Criterion 3, LLC,* 157 F. Supp. 3d 618, 620 (N.D. Miss. 2016) (quoting *Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 211 (1972)). Three specific provisions of the FHA bear on the Court's analysis in this case. Section 3604(a) makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 USC § 3604(a). Based on the current state of the law in this Circuit, claims under section 3604(a) appear to be limited to

6

discrimination that occurs when acquiring housing or possibly due to actions resulting in a constructive eviction. *See, e.g., Hood v. Pope*, No. H-14-1665, 2015 WL 225042, at *5 (S.D. Tex. Jan. 15, 2015), *aff'd*, 627 F. App'x 295 (5th Cir. 2015) ("Plaintiffs have not stated a claim under either Section 3604(a) or 3604(b) because they have not alleged that they were denied the requested unit, or otherwise discriminated against, in connection with the initial rental of the unit."); *AHF Comm. Dev., LLC v. City of Dallas*, 633 F. Supp. 2d 287, 300 (N.D. Tex. June 11, 2009) ("As a threshold matter, it is questionable whether a constructive eviction-type claim is even cognizable under § 3604(a)."); *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 742 (5th Cir. 2005) (finding that section 3604(a), which addresses only availability, does not apply to current homeowners whose complaint is that the value or habitability of their houses has decreased but declining to decide whether a current owner or renter evicted or constructively evicted from his house has a claim under section 3604(a)); *see also* Spencer Bailey, *Winning the Battle and the War Against Housing Discrimination: Post-Acquisition Discrimination Claims Under the Fair Housing Act*, 28 JAHCDL 223, 238 (2019) ("The Conclusion of *Cox*[, *supra*] is that, under § 3604(a), 'availability' simply means the ability to obtain housing . . . .").

Section 3604(b) makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." "Among the conduct to which section 3604(b) applies are threats to evict and actual or constructive eviction." *Hood v. Pope*, 627 F. App'x 295, 298 (5th Cir. 2015); *Terry v. Inocencio*, No. 3:11-CV-0660-K-BK, 2014 WL 4686570, at *8 (N.D. Tex. Sept. 2, 2014) ("The court of appeals [in *Cox*, 430, F.3d at 745] noted . . . that Section 3604(b) may encompass the claims of a renter for discrimination relating to actual or constructive eviction.") "Courts have [also] construed this provision to prohibit 'failing or delaying

maintenance or repairs' of the plaintiff's dwelling because of race." *Cox v. Phase III, Invs.*, No. H-12-3500, 2013 WL 3110218, at * 7 (S.D. Tex. June 14, 2013) (quoting 24 C.F.R. § 100.65).

Section 3617 makes it is illegal "to coerce, intimidate, threaten, or interfere with any person in the exercise of enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606" of the Fair Housing Act. 42 U.S.C. § 3617. Fifth Circuit precedent indicates that claims under section 3617, to be viable, do require an underlying violation of §§ 3603, 3604, 3605, or 3606. *See, e.g., Treece v. Perrier Condo. Owners Assn., Inc.*, 519 F. Supp. 3d 342, 365 (E.D. La. 2021); *Hood*, 627 F. App'x 300; *McZeal v. Ocwen Fin. Corp.*, 252 F.3d 1355, 2001 WL 422375, at *2 (5th Cir. 2001) ("Because [Plaintiff's] § 3605 claim fails, [his] claim under § 3617 must also fail."). "To state a retaliation claim under Section 3617 as Plaintiff apparently seeks to do here, [s]he must establish (1) that [s]he was engaged in an activity protected by the [FHA]; (2) that [Defendant] took adverse action against [her]; and (3) that a causal connection existed between the protected activity and the adverse action." *Pelot*, 157 F. Supp. 3d at 620; *see Terry*, 2014 WL 4686570, at *9. "A causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Terry*, 2014 WL 4686570, at *9.

The first issue is whether a discrimination claim under the FHA can be based, as in this case, on sexual harassment allegations. While the Fifth Circuit has not ruled on this issue, district courts in the Fifth Circuit, in light of out-of-circuit precedent[6] and the U.S. Supreme Court's recognition that sexual

---

[6] *See, e.g., Quigley v. Winter*, 598 F.3d 938, 946 (8th Cir. 2010) ("As a preliminary matter, [Defendant] questions whether a claim for hostile housing environment created by sexual harassment is actionable under the FHA. We conclude it is."); *DiCenso v. Cisneros*, 96 F.3d 1004, 1008-09 (7th Cir. 1996) ("Like the Tenth Circuit, we recognize a hostile housing environment cause of action, and begin our analysis with the more familiar Title VII standard."). *Cf. Weisbaum v. Dallas Housing Auth.*, No. 3:17-CV-1065-C, 2018 WL 2164521, at *3 (N.D. Tex. Apr. 20, 2018) ("The Fifth Circuit has held that in order to establish a violation under section 3604(b) [for non-sexual harassment claims], 'the alleged discrimination must

harassment can constitute discrimination in the Title VII context, have found that a Plaintiff can state a claim under section 3604(b) based on allegations of sexual harassment by alleging that a landlord's sexual harassment altered the terms, condition, or privilege on the use of a dwelling. *See Monus v. Riecke*, No. 21-218, 2021 WL 1721010, at *3 (E.D. La. Apr. 30, 2021) ("A plaintiff can state a claim under § 3604(b) by alleging that a landlord's sexual harassment altered the terms, conditions, or privileges on the use of a dwelling."); *Greater New Orleans Fair Hous. Action Ctr. v. Kelly*, 364 F. Supp. 3d 635, 650 (E.D. La. 2019); *Baker v. Waterford Square Homeowners Ass'n*, No. CIVA. 3:00-CV-0354-D, 2002 WL 1461735, at *3 (N.D. Tex. July 2, 2002) ("Courts that have recognized that hostile environment cases under the FHA appear to rely on § 3604(b) . . . ."). "These decisions are based upon the well-established principle—applied most often in the context of Title VII employment discrimination cases—that 'harassment based on sex is a form of discrimination.'" *Kelly*, 364 F. Supp. 3d at 651 (quoting *Honce v. Vigil*, 1 F.3d 1085, 1089 (10th Cir. 1993)). "Courts apply the Title VII sexual harassment standards for these claims under the FHA." *Kelly*, 364 F. Supp. 3d at 651.

"Under Title VII, there are two distinct categories of sexual harassment: 'quid pro quo' and hostile environment harassment." *Kelly*, 364 F. Supp. 3d at 651-52 (quoting *Honce*, 1 F.3d at 1089)). Plaintiff, in her response to Defendants' motion, argues that "Defendant's statements and actions amount to the type of conditional tenancy and 'quid pro quo' harassment that is outlawed by the FHA."[7] (Plaintiff's Response to Defendants' Motion to Dismiss Amended Complaint under Rule 12(b) ("Pl.'s

---

be in connection with the sale or rental of a dwelling.'"); *Pope*, 2015 WL 225042, at *4 ("The Fifth Circuit has held that Sections 3604(a) and 3604(b), both of which are invoked by plaintiffs in support of their disparate treatment claims, are limited to the 'initial sale or rental' of the property.'").

[7] Plaintiff, in her Amended Complaint, also alleges that Defendant "engaged in quid pro quo harassment by requesting sexual favors in exchange for a renewed lease under more favorable rental terms." (Pl.'s Am. Compl. at 1.)

9

Resp.") at 4.) "'Quid pro quo' harassment occurs when housing benefits are explicitly or implicitly conditioned on sexual favors."[8] *Quigley*, 598 F.3d at 947 (citing *Honce*, 1 F.3d at 1089)); *see, e.g., West v. DJ Mortgage, LLC*, 164 F. Supp. 3d 1393, 1400 (N.D. Ga. 2016) (finding that Plaintiff's allegations sufficiently pled an FHA quid pro quo sexual harassment claim). "Such harassment may be either explicit or implicit." *West II*, 271 F. Supp. 3d at 1359. "When considering the circumstances, the Court must assess the relationship between the sexual demands communicated and the housing benefits or terms threatened or promised." *Id.* "For instance, when a landlord discusses housing benefits at the time he is also making sexual advances, quid pro quo harassment may be inferred." *Id.* "In particular, a landlord's refusal to perform repairs in connections with a tenant's rebuff of his sexual advances may be sufficient evidence of quid pro quo harassment." *Id.*

In her Amended Complaint, Plaintiff alleges, *inter alia*, that she was subject to the following unwelcome harassment from Pondugula: (1) on August 31, 2020, when Plaintiff received her keys from Pondugula, Pondugula asked to take her out on a date, which she declined; (2) between September 2020 and June 2021, Pondugula continued to make advances and comments to Ms. Downing, telling her how beautiful she was and how much he liked her; (3) Pondugula grabbed Plaintiff's hand, asked her to give him a massage, and further asked her to "make me feel good;" (4) Pondugula later asked Plaintiff if she had reconsidered his request for a massage; (5) Pondugula stated that if Plaintiff made him feel good then he would take care of her and make sure her rent did not increase; (6) Pondugula made continuing advances towards Plaintiff for several weeks after Easter; and (7) Pondugula, in a telephone call, again asked Plaintiff to give him a massage. (Pl.'s Am. Compl. at 3-4.) Plaintiff further asserts that the

---

[8] Quid pro quo harassment is "where the terms and conditions of a rental, including continued occupation, rent, and the provision of repairs, are conditioned upon compliance with the sexual demands of a landlord." *West v. DJ Mortgage, LLC ("West II")*, 271 F. Supp. 3d 1336, 1359 (N.D. Ga. 2017).

harassment was based on her being a female and that her refusal to submit to the unwelcome advances resulted in Pondugula retaliating against her by, *inter alia*, refusing to make repairs and to renew her lease. (*Id.* at 5-7.)

After reviewing Plaintiff's allegations in the light most favorable to Plaintiff, the Court finds that these allegations are enough to state a plausible claim for quid pro quo sexual harassment under sections 3604(b) and 3617[9] as Pondugula's delay in making repairs and failure to renew her lease after Plaintiff's continued and repeated rejections of his advancements and requests for a massage appear, at least for purposes of a motion to dismiss, to be implicitly conditioned upon her submitting to such requests. Moreover, while Pondugula may not have *explicitly* conditioned Plaintiff's housing benefits on sexual favors, such an inference is clearly plausible based on Pondugula's communications and course of conduct. In addition, the Court finds that Plaintiff has adequately alleged that Pondugula's continued campaign of sexual harassment and his alleged acts of retaliation for her refusal to comply with his harassing requests interfered with Plaintiff's right to reside in and continue to have housing. *See, e.g., Krueger*, 115 F.3d at 491-92. Consequently, the Court finds and concludes that Defendants' motion to dismiss Plaintiff's FHA claims should be **DENIED**.

### 2. Claims Against Both Defendants

As set forth above, Defendants' claim that Plaintiff failed to plead which Defendant allegedly rented the property to Plaintiff and whether Pondugula's alleged acts can be attributed to Defendant Nephserv, LLC. (Defs.' Mot. at 7-9.) Plaintiff, in her response, states that she "seeks to hold Nephserv,

---

[9] Based on the current state of the law in this Circuit, as set forth above, Plaintiff's claims under section 3604(a) are most likely not viable because such section appears to be limited to discrimination that occurs when acquiring housing and not to discrimination that occurs post-acquisition. *See, e.g., Shelton v. Archer*, No. H-05-1263, 2006 WL 8444761, at *7 (S.D. Tex. Feb. 28, 2006) ("Specifically, § 3604(a) applies to situations 'where the availability of housing for prospective owners or tenants is implicated.'"); *Cox*, 430 F.3d at 742. However, because the Court finds, at this time, that Plaintiff has viable claims under sections 3604(b) and 3617 of the FHA, the Court does not need to decide this issue at this time.

LLC vicariously liable for the allegedly discriminating acts of its landlord and property manager, Kishore Pondugula," that she has adequately pled that Pondugula rented the property to her, and that Pondugula "is authorized to act on behalf of Nephserv, LLC as a director/agent of the company." (Pl.'s Resp. at 9.)

An action under the FHA is essentially an action in tort and it is well established that the FHA provides for vicarious liability. *See Inclusive Comms. Proj., Inc. v. Lincoln Prop. Co.*, No. 3:17-CV-206-K, 2017 WL 2984048, at *6 (N.D. Tex. July 13, 2017); *Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556, 562 (5th Cir. 1979). "Traditional vicarious liability rules ordinarily make principals or employers vicariously liable for the acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 281 (2003). Thus, a corporation can be subject to vicarious liability for the torts of its employees or agents. *Id.* Moreover, "Courts have held that the 'duty of a property owner not to discriminate in the leasing or sale of [their] property is non-delegable." *Terry*, 2014 WL 4686570, at * 5 (quoting *Walker v. Crigler*, 976 F.2d 900, 904 (4th Cir. 1992)).

In this case, Plaintiff alleges in her Amended Complaint that both Defendants, individually, were liable for the actions of Pondugula. Plaintiff further alleges that Nephserv, LLC is the company that owns the rented property and is an LLC that is legally registered and operating in the state of Texas. Plaintiff further claims that Pondugula operates Nephserv, LLC and is registered as a director/agent of Nephserv, LLC, which operates under the name of Bizflix, LLC, in which Pondugula is also a director/agent. (Pl.'s Am. Compl. at 2.) Based on these allegations, the Court finds that Plaintiff, for purposes of a motion to dismiss, has adequately alleged an agency relationship in which Nephserv, LLC could be vicariously liable for the actions of Pondugula.

### 3. Breach of Contract Claim

Defendant also argues that Plaintiff has failed to state a valid breach of contract claim in Count III of Plaintiff's Amended Complaint, which is titled "Breach of Contract/Violation of the Fair Housing Act 42 U.S.C. § 3604(a)." (Defs.' Mot. at 9-10; *see* Pl.'s Am. Compl. at 9.) In her response, Plaintiff acknowledges that, "[a]lthough the title of Count III alleged a 'Breach of Contract,' the essence of Plaintiff's claim in Count III was the illegal retaliation and discrimination in relation to the verbal agreement by Defendant in promising to renew Plaintiff's lease." (Pl.'s Am. Compl. at 10.) In addition, Plaintiff states that, "[d]espite the heading, the substance of Plaintiff's allegations in Count III sufficiently stated a claim of retaliation under the FHA, and sufficiently gave the Defendant fair notice of the allegations against him." (*Id.*) Based on the foregoing, the Court finds that Plaintiff's Count III does not involve a claim for breach of contract and sets forth only a claim under section 3604(a) of the FHA.

### 4. Damages

Defendants also argue that "Plaintiff has not pled how any of the alleged actions of Defendants caused harm to her" as Plaintiff, if she stopped living on the property, "would not have to pay rent." (Defs.' Br. at 10.) Defendants further claim that "Plaintiff utterly failed to plead either causation or damages." (*Id.*) The Court disagrees as Plaintiff has clearly alleged in her Amended Complaint that Defendants' actions violated, *inter alia*, her rights under the FHA, caused her severe anxiety and emotional stress, and caused her to undergo a stressful eviction proceeding in state court. Consequently, the Court finds, for purposes of a motion to dismiss, that Plaintiff has adequately alleged damages.

**B.     Rule 12(b)(5) and Insufficient Service of Process**

Rule 12(b)(5) "'permits a challenge to the method of service attempted by the plaintiff,' or the lack of delivery of the summons and complaint" and authorizes the court to dismiss a case for insufficient service of process. *Cunningham v. Burns*, No. 3:12-CV-1824-L, 2013 WL 4505157, at *2 (N.D. Tex. Aug. 23, 2013) (quoting *Tinsley v. Comm'r of I.R.S.*, 3:96-CV-1769-P, 1998 WL 59481, at *3 (N.D. Tex. Feb. 9, 1998)); *see Wheeler v. Ceniza*, No. 3:12-CV-1898-L, 2013 WL 1091242, at *3 (N.D. Tex. Mar. 15, 2013). "Absent proper service, the court cannot exercise personal jurisdiction over a party named as a defendant." *Ceniza*, 2013 WL 1091242, at *3; *see Winegarner v. Cinemark USA*, No. 3:08-CV-2232-N, 2009 WL 3199508, at *3 (N.D. Tex. Oct. 5, 2009) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97 (1987)) ("Due process under the United States Constitution requires that before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum."). The Court, in making a determination on the validity of service "'must look outside the complaint' to determine what steps, if any, the plaintiff took to effect service." *Morris v. Liberty Mut. Ins. Co.*, No. 08-4247, 2009 WL 1941203, at *1 (E.D. La. July 7, 2009). "Where the validity of service is challenged under Rule 12, the plaintiff bears the burden to establish validity of service." *Tinsley*, 1998 WL 59481, at *3. "A plaintiff generally meets this burden by producing the process server's return of service, which is accepted as prima facie evidence that service was effected and of the manner in which it was effected." *Id.* "Unless the defect in service is shown on the face of the return, the defendant is required to produce affidavits, discovery materials or other admissible evidence establishing lack of proper service." *Tinsley*, 1998 WL 59481, at *3. "In response, a plaintiff usually must submit evidence showing service was proper, or creating a fact issue requiring an evidentiary hearing to resolve." *Id.*

Defendant claims that Defendant Nephserv, LLC "has not been served, nor has a return of service been filed for Nephserv, LLC." (Defs.' Br. at 10.) In addition, Defendant argues that, "with regard to the return of service concerning Pondugula, there is no indication that Spencer Moore—the person who filled in the return of service form—is over the age of 18 and capable of effectuating service." (*Id.*) Consequently, Defendant claims that Plaintiff's claims them should be dismissed for insufficient service of process under Rule 12(b)(5). (*Id.*)

Plaintiff, in her response, argues that, as a *pro-se* litigant, she should be allowed more latitude to correct defects in service of process and pleadings. (Pl.'s Resp. at 11.) She requests that, if the Court finds that service was insufficient, that she be allowed time to correct the error. (*Id.* at 12.)

As stated above, the plaintiff has the burden to demonstrate valid service when an objection is made. *See also Carmini v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). In support of this burden, Plaintiff, as to Defendant Pondugula, filed a Proof of Service showing that Pondugula was served by Spencer Moore on September 23, 2021 [doc. 9]. Because there is no defect in service on the face of the return, the burden shifts to Defendants to produce affidavits, discovery materials or other admissible evidence establishing lack of proper service. As Defendants have failed to do so, the Court finds that service on Pondugula was proper.

However, as to Defendant Nephserv, there is no evidence in the record indicating that Nephserv was properly served, and Plaintiff has not produced any evidence with her response. Consequently, the Court finds that Defendant Nephserv has not been properly served. Rule 4(m) states, "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." While the 90-day period has run, in light of the procedural history of this case and Plaintiff's *pro se* status, the Court

finds that good cause exists for the failure and will grant Plaintiff a brief extension to get Defendant Nephserv, LLC properly served. *See, e.g.*, *Johnny L. Duncan v. City of Hammond*, No. 08-5043, 2009 WL 10680059, at *2 (E.D. La. Mar. 31, 2009).

## RECOMMENDATION

Based on the foregoing, it is recommended that Defendants' Motion to Dismiss for Failure to State a Claim [doc. 15] be **DENIED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **April 12, 2022** to serve and file written objections to the United States Magistrate Judge's proposed findings,

conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that Plaintiff's attempted service on Defendant Nephserv, LLC, if any, is **QUASHED**.

It is further **ORDERED** that Plaintiff, **no later than April 29, 2022**, serve Defendant Nephserv, LLC in compliance with Rule 4. Failure of Plaintiff to comply may result in all claims against Defendant Nephserv, LLC being dismissed without prejudice and without further notice.

SIGNED March 29, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv